UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 24-CR-00284 (JWB/LIB) |
| Plaintiff, | |
| v. | **DEFENDANT JOSHUA ARMBRUST'S POSITION REGARDING SENTENCING** |
| JOSHUA ARMBRUST, | |
| Defendant. | |

## I. Introduction

Defendant Joshua Armbrust, by and through his undersigned attorneys, respectfully submits his position with respect to sentencing. For the reasons outlined below, Mr. Armbrust asks the Court to sentence him to a three-year term of probation, which is consistent with Paragraph 10 of the final plea agreement (Doc. 10) and the United States Sentencing Guidelines. Such a sentence is also reasonable in light of the sentencing factors found in 18 USC § 3553(a)(2). This sentence would be sufficient, but not harsher than necessary, in light of Armbrust's conduct and personal characteristics.

## II. Relevant Facts

Joshua Armbrust was charged with, and pled guilty to, one count of computer fraud and abuse in violation of 18 USC § 1030(a)(5)(B)(c)(4)(A)(i)(I). One violates this statute by intentionally accessing a computer without authorization and recklessly causing damage to that computer. (Doc. 1, pg. 2).

1

Armbrust worked as an employee of Digital River from December of 2020 until May 2021. Digital River appears to be presently defunct, but while it was in operation it functioned as a cryptocurrency mining firm. These organizations use computer infrastructure, in this case Amazon Web Services ("AWS"), to solve complex mathematical problems. The solutions to these problems function as a form of digital currency. *See generally* Satoshi Nakamoto*, Bitcoin: A Peer-to-Peer Electronic Cash System,* BITCOIN.ORG https://bitcoin.org/bitcoin.pdf (describing Bitcoin, an early cryptocurrency, as "an electronic payment system based on cryptographic proof instead of trust, allowing any two willing parties to transact directly with each other without the need of a trusted third party."). Generating cryptocurrency is a time and energy-intensive process, and AWS billed Digital River for the use of AWS.

As part of his job at Digital River, Armbrust was given a code that allowed him to access his employer's connection to AWS, which hosted programs that generated cryptocurrency for Digital River. After he left Digital River, Armbrust used the same code to generate cryptocurrency for himself: he built a program that would run between 6 P.M. and 7 A.M. each day, and transfer cryptocurrency into an online "wallet" he controlled. (Doc. 32 ¶ ¶ 7-8). Over the course of several months, Armbrust's program generated $5,895 for himself while costing Digital River $45,270.

Armbrust's former employers figured out what was happening very quickly: he used the same code he had been given as an employee, and made no attempt to mask his I.P. address, the digital signature his computer used when accessing the internet. (Doc. 32, ¶7).

During this same period of time, Armbrust was caring for his mother, who was suffering from Reflex Sympathetic Dystrophy. (Doc. 32, ¶33). This is a painful, debilitating condition which causes chronic pain and muscle weakness. *Id*. Armbrust had been caring for his mother's condition since his early adolescence, and eventually she had to be moved to an assisted living facility. Several years before Armbrust's offense (in the fall of 2019), his mother moved out of an assisted living facility and into Armbrust's home, so he could care for her. Armbrust's offense was committed during the period in which he was caring for his mother, as her health deteriorated. *Id.* Simply put, Armbrust committed the present offense because he needed money due to the situation with his mother. Given his computer talents, this was the easiest way to get some.

Armbrust's mother died of a stroke in the summer of 2024 while he was being investigated for the present case. Armbrust called paramedics after recognizing the symptoms of a stroke, then performed CPR until the paramedics took her away. *Id.*

### III.   Relevant Law

When determining a reasonable sentence, the Court must consult the sentencing factors outlined in outlined in 18 U.S.C. § 3553(a) to arrive at a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Those purposes include:

> "[T]he need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

3

A different provision of the same statute, 18 U.S.C. § 3553(a)(3), requires the Court to consider "the kinds of sentences available," which the Supreme Court has interpreted to mean the Court must "consider sentences other than imprisonment." *Gall v. United States*, 552 U.S. 38, 59 (2007).

In determining a reasonable sentence under the 18 U.S.C. § 3553 factors, a court may, indeed must, consider the full scope of the defendant's history and character. *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007). In doing so, a court may vary downward from the recommendation contained in the U.S. Sentencing Guidelines. "In addition, factors that have already been taken into account in calculating the advisory guideline range, such as a defendant's lack of criminal history, can nevertheless form the basis of a variance." *United States v. Chase*, 560 F.3d 828, 831 (8th Cir. 2009).

In Armbrust's case, the sentencing guidelines designate a total offense level of 8, which for a category I offender like Armbrust yields a recommendation of zero to six months of imprisonment. A sentence of imprisonment is not required. *See* USSG §5C1.1(b). These guidelines are of course not binding upon the Court, but they are nevertheless the "product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46.

## IV. Argument

In Armbrust's case, the guidelines and the factors in 18 U.S.C. § 3553(a) both suggest a purely probationary sentence is reasonable.

A. **The Nature and Circumstances of the Offense**

18 U.S.C. § 3553(a)(1) directs the court to first consider the nature and circumstances of the offense. In Armbrust's case, he has admitted to accessing a former employer's digital infrastructure without authorization and using that infrastructure to generate $5,895 for himself. He committed this crime during a time of extreme financial need and considerable emotional distress. This conduct ultimately cost his former employer $45,270.

Armbrust's conduct, while criminal, was an act of desperation and despair, not a crime of greed. Armbrust did not set out to harm his former employer or disable their computer systems. He did not use sophisticated means or malicious code but rather recycled a password he was given while working as an employee. He made no attempt to cover his tracks. Armbrust's plea acknowledges that he *intentionally* accessed his employer's computer and *recklessly* caused the losses his employers incurred. Armbrust should have known better, but the Court should not regard him as a malicious hacker who set out to purposely damage his employer's digital infrastructure.

B. **The History and Characteristics of the Defendant**

18 U.S.C. § 3553(a)(1) next directs the Court to consider the history and characteristics of the Defendant. Armbrust's PSR notes that he has no prior criminal history of any kind. (Doc. 32, ¶¶ 24-26). The PSR notes that he is a dedicated son who lived with his mother and cared for her during her long illness, and who was present with her, providing medical care, on the day she died. (Doc. 32, ¶ 33). Armbrust has also recently secured employment at the National Guardian Life Insurance company, where he

is working as a cloud engineer. Armbrust's diligence and perseverance, as well as his minimal criminal history, should demonstrate to the Court that his sole criminal offense was an aberration brought on by life circumstances that will not repeat.

Critically, Armbrust took responsibility for his actions in the present case, admitting his conduct forthrightly to the Court at his plea hearing. He will submit an acceptance of responsibility statement before sentencing. The 8th Circuit has long recognized the importance of this admission. *See United States v. Sklavenitis,* 905 F.2d 1166, 1168 (8th Cir. 1990). "Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction" is "significant evidence of acceptance of responsibility…." U.S.S.G . §3E1.1.

Finally, the Court should factor in Armbrust's mental health in fashioning a sentence. Armbrust's PSR notes that he suffers from both anxiety and depression. (Doc. 32, ¶ 40). He treats both with ketamine therapy and a mood stabilizer called Lamotrigine. He also attends talk therapy sessions at Vantage Mental Health. Because of these conditions, a sentence of confinement would fall more harshly on Armbrust than on other Defendants, which is a further reason why probation is appropriate in his case.

C. **Deterrence and Respect for the Law**

18 U.S.C. § 3553(a)(2)(A), (B), and (C) direct the court to consider the effect of the sentence imposed in promoting respect for the law and deterring others, and the defendant, from committing future crimes.

A sentence of probation, following a felony conviction, is a significant sanction. Probation involves inherent restrictions on liberty that comport with 18 U.S.C. §

3553(a)'s goal of imposing a punishment commensurate with the offense. "Offenders on probation are…subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007). "Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *United States v. Knights*, 534 U.S. 112, 119 (2001) (Internal quotations removed).

Furthermore, Armbrust's status as a felon imposes significant punishment and deterrent effect. *See Morissette v. United States*, 342 U.S. 246, 260 (1952) (noting that a felony label alone is "as bad a word as you can give a man or thing."). Armbrust will carry this felony designation for the rest of his life, long after any probationary sentence has ended.

Finally, Armbrust's PSR notes that offenders like Armbrust who are sentenced under USSG §2B1.1 typically receive no prison time, with only 17% receiving a sentence of imprisonment in whole or in part. (Doc. 32, ¶64), meaning a probationary sentence is well in line with other cases in the United States for this sort of conduct.

## V. Conclusion

For the foregoing reasons, a probationary sentence of 3 years is wholly appropriate given Armbrust's admitted conduct, his laudable personal qualities, and the significant impact probation and felony status will have on his life. Armbrust respectfully asks the Government to impose the sentence agreed-upon in his plea agreement.

Date:  July 17, 2025					Respectfully submitted,


					By:	*/s/ William J. Mauzy*
						William J. Mauzy (#68974)
						William R. Dooling #0402244)
						Mauzy Law Office, PA
						650 Third Avenue South
						Suite 260
						Minneapolis, MN 55402
						(612) 340-9108
						wmauzy@mauzylawfirm.com
						*Attorneys for Defendant*